Patrice L. Bishop (Bar No. 182256)
pbishop@aftlaw.com
ABRAHAM, FRUCHTER
& TWERSKY, LLP
9440 Santa Monica Blvd.
Bank of America Building
Suite 301
Beverly Hills, CA 90210
Tel: (310) 279-5125
Fax: (212) 279-3655

*Local Counsel for Plaintiff and the Class*

[*Additional Counsel on Signature Page*]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHAEL ROGGE, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

FORD MOTOR CO.,

Defendant.

Case No. 2:26-cv-8400

**CLASS ACTION**

**COMPLAINT**

**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF**

**DEMAND FOR JURY TRIAL**

Plaintiff Michael Rogge, individually and on behalf of all others similarly situated (the "Class", "Class Members" as further defined below), brings this Class Action Complaint against Ford Motor Co. and alleges, upon personal knowledge as to his own actions and the investigation of counsel, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a consumer protection and warranty action arising from Defendant's uniform representations that model years 2021 through 2025, inclusive, Lincoln Corsair vehicles (the "Class Vehicles") were capable of being "flat towed," a specialized and material feature that relies on a hinged tow bar to create a mechanical bridge between the two vehicles. This method is, among other things, the gold standard for long-distance travelers because it allows the towed vehicle to track naturally and effortlessly behind the recreational vehicle ("RV"), mirroring its path through turns without the added weight or storage complications of extra towing hardware. When properly configured with a base plate and a supplemental braking system, the connection process is remarkably swift, often taking only a few minutes to engage or release.

2. This method, however, requires a specific mechanical state whereby the towed vehicle's steering remains unlocked to allow for tracking and is configured to prevent damage while the engine is inoperative. To legally and safely accommodate flat towing, a vehicle must be designed by the manufacturer with specific internal hardware and software features. Flat towing capability is a rare and highly desirable feature for the Class Vehicles and materially impacts purchasing decisions.

3. Defendant marketed, advertised, and sold the Lincoln Corsair as possessing flat towing capability through its Owner's Manuals, marketing materials, and pre-sale representations.

4. Plaintiff and Class members purchased or leased their Class Vehicles in reliance on these representations.

5. After the sale, Defendant issued a corrective service campaign (the "Campaign") relating to a software defect affecting the Class Vehicles' capability to be "flat towed" (the "Defect").

6. The Campaign notice, issued in or about February 2025, informed owners or lessees of the Class Vehicles that although the digital owner's manual states that the vehicle has flat tow capability, damage to the powertrain may occur if the flat tow process is initiated. The eventual voluntary remedy suggested by Defendant is a software update that eliminates the flat towing capability of the vehicle altogether (the "Campaign Notice").

7. As a result, Plaintiff and the Class members are forced to choose between participating in the Campaign and losing a core, advertised feature or declining to participate in the Campaign and possibly incurring significant damage to the vehicle if flat towed.

8. Defendant has not provided a repair that restores the promised flat towing functionality.

9. Accordingly, Plaintiff and Class members did not receive the benefit of their bargain and have suffered economic injury.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). The aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs. This is a class action in which more than two-thirds of the proposed plaintiff class are citizens of states other than the Defendant's.

11. Plaintiff brings this action on behalf of a proposed California class consisting of hundreds, if not thousands, of purchasers and lessees of the Class Vehicles marketed and sold as being capable of "flat towing" behind recreational vehicles and for other towing and transportation applications (the "Class"). The Class is sufficiently numerous that joinder of all members is impracticable.

12. Minimal diversity exists because at least one member, if not all members, of the proposed class is a citizen of a different state than Defendant Ford Motor Company, the manufacturer of the Class Vehicles, which is a Delaware corporation with its principal place of business in Michigan.

13. In addition, Defendant's conduct giving rise to Plaintiff's claims—including the design, testing, marketing, and sale of the Class Vehicles and representations regarding their flat-towing capability—was conducted, in substantial part, in interstate commerce and across multiple states.

14. Accordingly, jurisdiction is proper under CAFA.

## PARTIES

15. Michael Rogge is a citizen of California and resident of Ventura County. He purchased a brand-new 2023 Lincoln Corsair on March 24, 2024, from Jim Burke Ford in Bakersfield, CA

16. Prior to purchase, Plaintiff reviewed Defendant's marketing materials and understood that the vehicle could be flat towed.

17. Plaintiff relied on these representations in deciding to purchase the vehicle.

18. Plaintiff owns a recreational vehicle and selected the Lincoln Corsair because of its flat towing capability.

19. Defendant Ford Motor Company is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Michigan.

20. Defendant designs, manufactures, markets, distributes, and sells the Class Vehicles throughout the United States, including in California.

## SUBSTANTIVE ALLEGATIONS

**Flat Towing Capability as a Material Feature**

21. The Flat towing refers to towing a vehicle with all four wheels on the ground behind another vehicle, typically an RV.

22. Flat towing capability confers significant functional value by affording consumers the attribute of transporting a secondary vehicle without the cost, storage burden, or operational limitations of trailers. Because only a limited number of vehicles are engineered and manufacturer-approved for flat towing, the feature is relatively scarce in the automotive market and is an attractive and unique feature not available in many comparable vehicles.

23. This capability requires specific engineering and design features and is not available in most passenger vehicles. It requires vehicles to be specifically engineered to permit safe operation with all four wheels on the ground while the engine is off. This method is not universally compatible with modern vehicles and depends on whether the drivetrain, transmission, and steering systems are designed to accommodate such use.

24. Industry sources explain that flat towing requires not only proper towing equipment, but also specific vehicle design features. As explained by Capital One Auto Navigator:[1]

> Mechanically, flat towing is not suitable for many modern cars, trucks, or SUVs. It's ideal for vehicles with manual transmissions, which allow the car to be placed in neutral and roll easily as they're towed. Even four-by-four vehicles can be flat towed, provided the transfer case is disengaged and the wheels roll freely. Vehicles with automatic or continuously variable transmissions can be easily damaged, as it's far more difficult, if not impossible, to place them in neutral. Vehicles must be intentionally designed to be towed in this manner for it to

---

[1] *Capital One Auto Navigator, What Is Flat Towing?*, https://www.capitalone.com/cars/learn/finding-the-right-car/what-is-flat-towing/3421/ (last accessed July 28, 2026).

> be safe. Flat towing can also be a challenge on vehicles where the steering column locks solid when the vehicle is turned off, as the front wheels need to be able to turn to follow the towing vehicle through corners.

25. This authoritative explanation confirms that flat towing is not an incidental use applicable to all vehicles but instead requires intentional engineering design choices that allow the transmission to be placed in neutral, permit drivetrain components to rotate without damage, and ensure the steering system remains capable of tracking behind the towing vehicle. Vehicles lacking these design features may suffer significant mechanical damage if flat towed. Vehicles lacking this capability cannot be safely or effectively used for flat towing.

26. As a result, flat towing capability is a material and often decisive feature for consumers.

27. Plaintiff and putative class members paid a price that reflected the represented inclusion of a functional flat-tow capability as a material and value-driving feature, particularly for consumers who intend to tow vehicles behind recreational vehicles. Due to the Defect, the Class Vehicles do not reliably provide that capability, rendering them less valuable than represented at the time of sale. Accordingly, Plaintiff and other members of the Class overpaid for the vehicle at purchase. The Defect has since manifested in the form of diminished resale value, as the market recognizes that the Class Vehicles lack the promised functionality, further evidence of the disparity between the price paid and the actual value received.

28. As a result of the Defect and Campaign, the customer is forced either to disregard the manufacturer's own safety concerns or to continue operating the vehicle in a condition identified as potentially defective. Both options will cause owners to reasonably incur additional out-of-pocket costs to pursue alternative towing methods such as a dolly or trailer. Those alternatives effectively replace the

flat-tow functionality that formed part of the vehicle's expected value at purchase and potential value at resale.

29. Additionally, Plaintiff and the Class are left with sunk costs for specialized towing equipment that was purchased specifically for that purpose. Flat tow setups typically require multiple components—such as a tow bar, base plate, supplemental braking system, wiring harness, and safety cables—with total consumer costs for of equipment and installation commonly ranging from approximately $1,500 to over $4,000 depending on brand, vehicle compatibility, and installation requirements. These expenditures become economically wasted or significantly devalued if flat towing is no longer viable for the vehicle, because the equipment is purpose-built and not generally transferable to other uses. As a result, the customer incurs a concrete financial loss in the form of stranded, underutilized equipment costs that were reasonably and foreseeably incurred in reliance on the vehicle's represented flat-tow capability.

30. Members of the proposed Class, including the named Plaintiff, would not have purchased or leased the Class Vehicles had they known that their Class Vehicles' flat-tow capability would not be reliable, durable, or safely usable as represented or reasonably understood at the time of sale. Class members purchased the vehicle, as well as, in many instances, the equipment to implement the Class Vehicles flat-towing capability, in reliance on the expectation that this capability would function consistently when used in accordance with manufacturer instructions. Had they been informed that the feature was subject to limitations, defects, or later impairment rendering it unreliable or unsafe, they would have either chosen a different vehicle or not purchased a towable vehicle at all and/or equipment and instead selected an alternative product that provided dependable flat-tow performance.

**Defendant's Misrepresentation**

31. Defendant represented that the Class Vehicles were capable of being flat towed. According to the official 2023 Lincoln Corsair Owner's Manual,[2] and owner's manual from the Corsair's inception in 2021 to 2025 models, Defendant expressly represents that the vehicle is engineered with specific mechanical and software configurations to accommodate flat towing. Under the section titled "Emergency Towing – Plug-In Hybrid Electric Vehicle (PHEV)," the Defendant states that if a vehicle becomes inoperable and transport hardware is unavailable, the vehicle "can be flat-towed with all wheels on the ground, regardless of the powertrain and transmission configuration."

32. The Defendant further defines the parameters for this authorized use, specifying that flat towing is permissible provided that the vehicle is facing forward, the "Neutral Tow" mode is activated, and the parking brake is released. The Manual explicitly provides for a maximum towing speed of 35 mph (55 km/h) and a maximum distance of 50 miles (80 km). These detailed instructions constitute an express warranty that the vehicle's transmission and drivetrain are designed to remain lubricated and undamaged while all four wheels are in motion, provided these manufacturer-prescribed conditions are met.

33. Furthermore, the Defendant provides a specific cautionary note within these instructions, stating: "Note: Failure to follow these instructions could result in damage to the transmission." By issuing this specific warning, Defendant admits that the transmission is a sensitive component requiring precise engagement of the "Neutral Tow" feature to remain viable. Consequently, this statement creates a reciprocal warranty: that adherence to the provided instructions serves as a

---

[2] *See* https://www.fordservicecontent.com/Ford_Content/vdirsnet/OwnerManual/Home/Content?variantid=10188&languageCode=en&countryCode=USA&Uid=G2262041&ProcUid=G2175885&userMarket=USA&div=l&vFilteringEnabled=False&buildtype=web (last accessed on July 28, 2026).

complete and effective safeguard against transmission damage during flat-towing operations.

34. Plaintiff reasonably relied upon these technical specifications as a representation of the vehicle's "Neutral Tow" software efficacy and its underlying mechanical fitness. By marketing a specific "Neutral Tow" setting within the vehicle's information display menu and explicitly outlining the consequences of its misuse, Defendant represented to the Plaintiff and members of the proposed Class that the vehicle possessed the requisite internal hardware capabilities to safely facilitate four-wheel-down transport without incurring catastrophic powertrain failure.

35. Even the official Lincoln Towing Guide[3] further reinforces that the Lincoln Corsair was positioned within the recreational towing market, rather than as an incidental or unintended use. The Lincoln towing guide expressly acknowledges that "many motorhome owners prefer the practicality of having another vehicle along when they travel" and that towing a vehicle behind a motorhome has "become more and more popular in recent years." It further notes that "many of those who want to tow another vehicle prefer one that can be easily towed without a dolly or trailer," and discusses proper braking systems for such setups. This language reflects a desire by Ford to market the Class Vehicles in the RV market, and, more importantly, illustrates Ford's recognition of the flat tow feature as central to customers' needs and purchasing decisions.

36. Defendant's online advertisements also represented that the vehicle could be flat towed.

37. An instructional video[4] put out by Lincoln appearing on YouTube further reinforces the vehicle's advertised flat-tow capability by walking

---

[3] *See* https://content.fordpro.com/content/dam/fordpro/us/en-us/pdf/towing-guides/2023-LincolnTowingGuide_r1_Nov26.pdf (last accessed on July 28, 2026).
[4] *See* https://www.youtube.com/watch?v=kk2Yg-5RUQg (last accessed on July

consumers through the step-by-step procedures required to safely flat tow the vehicle behind an RV. In doing so, the manufacturer did not present flat towing as an extraordinary or experimental use, but as a normal and intended operating function, provided that specified instructions were followed. This guidance contributed to consumers' reasonable expectation that flat towing was a reliable, manufacturer-supported feature integral to the vehicle's utility for RV travel.

38. These representations were uniform and disseminated to all purchasers or leasees of the Class Vehicles.

39. The representations were material to reasonable consumers.

40. Plaintiff brings this case as a class action. The Class is defined as follows:

> All persons or entities who purchased or leased a Class Vehicle in California or who were citizens of California, but purchased or leased a Class Vehicle outside of California, that was marketed, advertised, or represented by Defendant as being "flat towable" (or capable of four-wheel-down towing).

## CLASS ACTION ALLEGATIONS

41. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any of Defendant's officers or directors, any successors, and any judge who adjudicates this case, including their staff and immediate family.

42. Plaintiff reserves the right to amend the Class definition.

43. This action satisfies the requirements under Cal. Code of Civil Procedure § 382 as there is: (1) an ascertainable and sufficiently numerous class; (2) a well-defined community of interest; and (3) substantial benefits from certification that render proceeding as a class superior to the alternatives.

---

28, 2026).

44. The community of interest requirement involves three factors this action meets: (i) there are predominant common questions of law or fact; (ii) class representatives have claims or defenses typical of the class; and (iii) class representatives who will adequately represent the class.

a. **Numerosity**. The members of the Class are so numerous that joinder would be impracticable. The exact number of Class members is unknown to Plaintiff, but on information and belief, consists of thousands of purchasers and lessees of Class Vehicles.

b. **Ascertainability**. The identities of Class Members are easily ascertainable through Defendant's records.

c. **Typicality**. Plaintiff's claims are typical of the Class claims as each arises from the same factual and legal theories. Moreover, many of Defendant's defenses potentially arise from the same factual and legal theories.

d. **Adequacy**. Plaintiff will fairly and adequately protect the interests of the proposed Class. His interests do not conflict with the interests of the Class, and Plaintiff has retained counsel experienced in complex class action litigation to prosecute this action on behalf of the Class, including as lead counsel in prior vehicle class action cases.

e. **Commonality**. Plaintiff's claims and the Class members' claims raise predominantly common factual and legal questions that a class-wide proceeding can answer for the Class.

45. Common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation as well as any other available method to fairly and efficiently adjudicate the controversy. Common questions of law or fact include, without limitation:

a. Whether the Class Vehicles contain the Defect;

b. Whether Defendant knew or should have known of the Defect at the time the Class Vehicles were marketed, sold or leased, and thereby made material misrepresentations about the Class Vehicles;

c. Whether Defendant's conduct violates consumer-protection and warranty laws;

d. Whether Defendant's omissions and representations were material;

e. Whether Defendant was unjustly enriched by its conduct;

f. Whether class members suffered a common type of injury, such as overpayment or diminished value; and

g. The appropriate measure of damages and equitable relief.

46. The damages available to Plaintiff are insufficient to make individual lawsuits economically feasible.

47. Without class certification and determination of the legal and other questions within the class format, prosecution of separate actions by individual members of the putative Class will create the risk of:

a. Inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the parties opposing the Class;

b. Adjudication with respect to individual members of the Class, which would, as a practical matter, be dispositive of the interests of the other members not party to the adjudication, or which would substantially impair their ability to protect their interests;

c. Inconsistent equitable relief.

///

///

///

## CLAIMS FOR RELIEF

## COUNT I

### Unlawful, Unfair, and Fraudulent Business Practices, Cal. Bus. & Prof. Code § 17200, *et seq*.

48. Plaintiff, on behalf of himself and the proposed Class, incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

49. Defendant engaged in fraudulent business practices by representing that its Class Vehicles were "flat-towable" or capable of four-wheel-down towing, while failing to adequately disclose material limitations, conditions, and requirements necessary to safely and properly perform such towing. These representations, partial disclosures and omissions created the misleading impression that the vehicles were readily and safely flat-tow capable in ordinary use, without significant restriction, modification, or risk of damage, when in fact the opposite is true.

50. Plaintiff accordingly seeks an order enjoining Defendant from continuing the challenged practices, requiring corrective disclosures regarding the true nature and limitations of the subject vehicles' flat-towing capabilities, and awarding restitution to restore all monies wrongfully acquired by Defendant as a result of its misconduct, together with such other and further relief as the Court deems just and proper.

## COUNT II

### Unjust Enrichment

51. Plaintiff, on behalf of himself and the Class, realleges and incorporates by reference all preceding allegations as if fully set forth herein.

52. As a result of Defendant's wrongful conduct as alleged herein, Defendant has knowingly received and retained benefits at the expense of Plaintiff and members of the Class. Specifically, Defendant has been unjustly enriched

through the sale and lease of Class Vehicles marketed and represented as being capable of flat towing, including premiums paid for that purported capability and additional revenue derived from related warranties, services, and vehicle transactions.

53. Defendant's enrichment is unjust because it was obtained through misrepresentations and omissions regarding the Class Vehicles' flat-towing capabilities and limitations, and because Plaintiff and Class members conferred benefits upon Defendant based on a reasonable expectation that the Class Vehicles would conform to Defendant's representations. It would be inequitable and unconscionable for Defendant to retain such benefits while Plaintiff and Class members bear the resulting losses, including out-of-pocket expenses, diminished vehicle value, and costs associated with attempting to use the Class Vehicles as represented.

54. Accordingly, Plaintiff and the Class are entitled to restitution and disgorgement of all amounts wrongfully obtained by Defendant as a result of its unjust enrichment, in an amount to be determined at trial, together with such other and further relief as the Court deems just and proper.

**COUNT III**

**Breach of Express Warranty,**

**Cal. Com. Code § 2313**

55. Plaintiff, on behalf of himself and the Class, realleges and incorporates by reference all preceding allegations as if fully set forth herein.

56. Defendant provided express warranties and affirmations of fact regarding the Class Vehicles, including representations in owner's manuals, towing guides, marketing materials, dealer communications, and other documentation, stating that the Class Vehicles were capable of "flat-towing" or four-wheel-down towing. These affirmations of fact and promises formed part of the basis of the bargain between Defendant and Plaintiff and the Class.

57. Plaintiff and Class Members are the direct beneficiaries of Defendant's warranties. Privity exists between the Defendant and Plaintiff and the Class.

58. The statements regarding flat-towing capability constitute express warranties within the meaning of California Commercial Code § 2313, as they were affirmations of fact or promises relating to the goods which became part of the basis of the bargain. Plaintiff and Class members reasonably relied upon these express representations in deciding to purchase or lease the Class Vehicles.

59. Contrary to Defendant's express warranties, the Class Vehicles did not conform to the representations made by Defendant. As alleged above, the Class Vehicles were not capable of being safely, properly, or reliably flat towed in the manner represented, or were subject to material limitations, conditions, and requirements that were not adequately disclosed to consumers at the time of sale or lease. As a result, the Class Vehicles failed to conform to Defendant's express warranties.

60. Plaintiff and Class members provided timely notice to Defendant of the alleged violations of the California Civil Code through a pre-suit notice which was received by Defendant thirty (30) days before the filing of this complaint as is required by Cal. Civ. Code § 1782. Notwithstanding such notice, Defendant failed and refused to adequately repair, replace, or otherwise remedy the nonconforming condition.

61. As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and Class members have suffered damages, including but not limited to out-of-pocket costs, diminished vehicle value, loss of use, and costs incurred in attempting to use or remedy the towing incompatibility.

**COUNT IV**

**Breach of Implied Warranty of Merchantability**

**Cal. Civ. Code §§ 1791.1, 1792, 1794**

62. Plaintiff, on behalf of himself and the Class, realleges and incorporates by reference all preceding allegations as if fully set forth herein.

63. At the time of sale or lease, Defendant impliedly warranted that the Class Vehicles were merchantable within the meaning of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1791.1 and 1792, including that they were fit for the ordinary purposes for which such goods are used and would conform to the promises or affirmations of fact made by Defendant.

64. Plaintiff and members of the Class purchased or leased the Class Vehicles for ordinary consumer use, including recreational driving and, as represented by Defendant in owner's manuals and related materials, flat towing. Defendant's instructions and guidance regarding flat towing were part of the basis of the bargain resulted in privity between Defendant and Plaintiff and the Class, and reflected that the Class Vehicles were intended and represented to be usable for such purposes when operated in accordance with those instructions.

65. Contrary to Defendant's implied warranty, the Class Vehicles were not fit for their ordinary and intended purposes as represented. The Class Vehicles, as delivered, were not reasonably usable for flat towing in the manner represented without encountering material limitations, restrictions, or risks not adequately disclosed to consumers at the time of sale or lease.

66. As a result of Defendant's breach of the implied warranty of merchantability, Plaintiff and members of the Class have suffered damages, including diminution in value, out-of-pocket expenses, loss of use, and other consequential losses.

**COUNT V**

**Violation of the Consumer Legal Remedies Act,**

**Cal. Civ. Code § 1750, *et seq*.**

67. Plaintiff, on behalf of himself and the Class realleges and incorporates by reference all of the allegations asserted above as if fully set forth herein.

68. Plaintiff and members of the Class are "consumers" within the meaning of California Civil Code § 1761(d), and the Class Vehicles are "goods" within the meaning of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.

69. Defendant is a "person" within the meaning of the CLRA and engaged in unfair methods of competition and unfair or deceptive acts or practices in violation of the CLRA, including but not limited to the following conduct proscribed by Civil Code § 1770(a):

a. Representing that the Class Vehicles have characteristics, uses, and benefits which they do not have, including that they are readily and safely capable of flat towing or four-wheel-down towing;

b. Representing that the Class Vehicles are of a particular standard, quality, or grade when they are not, including as to their towing capabilities and limitations;

c. Advertising goods with intent not to sell them as advertised, in that Defendant marketed the Class Vehicles as flat-tow capable while failing to adequately disclose material restrictions, conditions, or risks associated with such use; and

d. Omitting and failing to state material facts necessary to make Defendant's representations misleading, including the true nature,

limitations, and required conditions for flat towing the Class Vehicles.

70. These representations and omissions were material, were likely to deceive a reasonable consumer, and were relied upon by Plaintiff and members of the Class in deciding to purchase or lease the Class Vehicles for recreational towing purposes.

71. As a direct and proximate result of Defendant's violations of the CLRA, Plaintiff and members of the Class have suffered damages, including out-of-pocket losses, diminished vehicle value, and related consequential expenses. Plaintiff notified Defendant of the alleged violations of the California Civil Code through a pre-suit notice which was received by Defendant thirty (30) days before the filing of this complaint as is required by Cal. Civ. Code § 1782. Plaintiff seeks actual damages, restitution, and reasonable attorneys' fees and costs pursuant to California Civil Code § 1780(e).

**COUNT VI**

**Violation of Song-Beverly Consumer Warranty Act,**

**Cal. Civ. Code § 1790, *et seq*.**

72. Plaintiff, on behalf of himself and the proposed Class, realleges and incorporates by reference all preceding allegations as if fully set forth herein.

73. The subject Class Vehicles are "consumer goods" within the meaning of the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code § 1791(a), and were purchased or leased primarily for personal, family, or household use. Plaintiff and members of the Class are "buyers" within the meaning of the Act.

74. Defendant provided express warranties within the meaning of Cal. Civ. Code § 1791.2 and § 1793.2, including affirmations of fact and promises in owner's manuals, towing guides, marketing materials, and other representations

stating that the Class Vehicles were capable of flat towing or four-wheel-down towing, subject to specified conditions.

75. Despite these express warranties, the Class Vehicles failed to conform to Defendant's affirmations and promises. As alleged above, they were not capable of being safely, properly, and reliably flat-towed in the manner represented, or were subject to material limitations and conditions that were not adequately disclosed to consumers at the time of sale or lease. As a result, the Class Vehicles were defective and nonconforming to Defendant's express warranties.

76. Plaintiff notified Defendant of the alleged violations of the California Civil Code through a pre-suit notice which was received by Defendant thirty (30) days before the filing of this complaint as is required by Cal. Civ. Code § 1782. . Notwithstanding such notice, Defendant failed and refused to repair, replace, or otherwise conform the Class Vehicles to the express warranties within a reasonable number of attempts.

77. As a direct and proximate result of Defendant's breaches of express warranties, Plaintiff and members of the Class have suffered damages, including but not limited to diminution in value, out-of-pocket expenses, loss of use, and costs incurred in attempting to use or remedy the towing incompatibility. Plaintiff and the Class are entitled to all remedies available under the Song-Beverly Act, including restitution, consequential damages, and attorneys' fees and costs

## PRAYER FOR RELIEF

Plaintiff and the Class demand a jury trial on all legal claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as Class representative, and appointing his counsel to represent the Class;

B. Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, statutory damages, and forward-looking injunctive relief benefiting the public at large, as allowed by law;

C. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

D. Providing equitable relief as appropriate under principles of equity.

E. Awarding attorneys' fees and costs, as allowed by law;

F. Awarding prejudgment and post-judgment interest, as provided by law;

G. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

H. Granting such other or further relief as may be appropriate under the circumstances.

**ABRAHAM, FRUCHTER & TWERSKY, LLP**

Dated: July 30, 2026

By: */s/ Patrice L. Bishop*

Patrice L. Bishop
9440 Santa Monica Blvd.
Bank of America Building
Suite 301
Beverly Hills, CA 90210
Tel: (310) 279-5125
Email: pbishop@aftlaw.com

*Local Counsel for Plaintiff and the Proposed Putative Class*

Howard T. Longman, Esq.
**LONGMAN LAW, P.C.**
354 Eisenhower Pkwy, Suite 2250
Livingston, New Jersey 07039
Tel: (973) 994-2315
Email: hlongman@longman.law

Gary S. Graifman. Esq.
**KANTROWITZ, GOLDHAMER, GRAIFMAN, PERLMUTTER & CARBALLO, P.C.**
135 Chestnut Ridge Rd, Suite 200
Montvale, NJ 07645
Tel: (845) 356-2570
Email: ggraifman@kgglaw.com

*Counsel for Plaintiff and the Proposed Putative Class*